**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Chad Allen Seibel, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER ADOPTING REPORT AND** |
| vs. ) | **RECOMMENDATION** |
| ) | |
| Ken Johnson, Pharmacist-NDSP, and ) | |
| Kathy Bachmeier, Head of Nursing-NDSP, ) | |
| in their individual and official capacities, ) | Case No. 1:08-cv-069 |
| ) | |
| Defendants. ) | |

_____

On July 22, 2008, the plaintiff, Chad Seibel, filed a Prison Litigation Reform Act (PLRA) packet and an application to proceed in forma pauperis. See Docket Nos. 1 and 2. On August 1, 2008, Seibel filed a pro se complaint pursuant to 42 U.S.C. § 1983. See Docket No. 6. Seibel's action relates to eye injuries he allegedly suffered while housed at the North Dakota State Penitentiary. Seibel states,

> In June 2001 I was diagnosed with toxoplasmosis in my right eye. I was prescribed 5 medications that I was supposed to take continuously to prevent further damage to my eye. These medications were, pyrimethamine, sulfadiazine, clindamycin, prednisone, and leucovorin.
>
> At the time medications dispensed weekly on Tuesdays by exchanging your used med-cards, from the previous week, for new cards at the med-line located next to the traffic desk at the North Dakota State Penitentiary (NDSP).
>
> On July 17, 2001 I went to the morning med-line with my empty med-cards to exchange for my new ones for the following prescriptions, pyrimethamine, sulfadiazine, clindamycin, and prednisone. The RN working was Colleen (last name unknown), I gave her my old cards but she couldn't find my new cards. Colleen then showed me on my old cards where they had expired, meaning the prescription had run out. I then explained that I'd seen the eye specialist , Dr. Max Johnson, the week before and that he had renewed the prescriptions and told her how important it was that I continue taking these medications. She took down my name and told my to check back at the next med-line, which would have been at 12:30 pm.

> I returned at 12:30pm, 5:45pm, and 8:00pm, on the 17th and again went to all four med-lines on Wednesday the 18th. On Thursday the 19th I stopped at the Noon med-line to see if my leucovorin, which I took only twice a week Mondays and Thursdays, was there, and it was. The nurse then also checked for the other medications but could find nothing. Ken Johnson the Pharmacist said the prescriptions were filled whenI inquired about the whereabouts of my prescriptions. Knowing the importance of these medications for keeping my eyesight intact, and knowing that I did not receive 4 of the 5 prescribed medications, I believe it would not have been out of line for the pharmacist to fill an emergency med-card for the remainder of the week.
>
> On July 27, 2001 I was stopped in the hallway by another RN at NDSP named Beth, she asked me why I hadn't been taking my medications. I then told her that when I had been to the med-line the day before for my twice weekly leucovorin I had asked about my other medications, the nurse had checked, but they still couldn't find them. Beth walked with me up to the med-line and looked, she found the missing medications, I began taking them immediately as prescribed.
>
> On August 9, 2001, before going to bed, I experienced trouble seeing out of my right eye. The following morning, the 10th, I could not see at all so I notified my Case Manager, Steve Bement, who called the infirmary and was told that they were unable to do anything until Kathy Bachmeier returned the following week.
>
> On August 15, 2001 I saw Dr. Fitzpatrick who told me I had a detached retina due to the interruption of taking my medications, and was referred to a retina specialist in Minnesota, Dr. Tim Olson, who I saw on August 21, 2001 for retinal surgery.

See Docket No. 6 (errors in original). On January 5, 2009, the Defendants filed a motion for summary judgment. See Docket No. 22.

Magistrate Judge Charles S. Miller, Jr. conducted a review of the record and relevant case law and submitted a Report and Recommendation on July 22, 2009. See Docket No. 29. Judge Miller recommended that the Defendants' motion for summary judgment be granted as follows:

1) That Seibel's Eighth Amendment claim against the Defendants which is premised upon an alleged failure to properly dispense medications be dismissed with prejudice.

2) That Seibel's Eighth Amendment claim against the Defendants which is premised upon the alleged failure to promptly treat his detached retina be dismissed without prejudice for failure to exhaust available prison remedies.

Seibel was given ten (10) days to file an objection to the Report and Recommendation. Seibel filed an objection on August 7, 2009. See Docket No. 30.

> Seibel states the following in his objection to the Report and Recommendation:
> 
> First of all the Plaintiff wants to make it clear that at the time the refills for his medical cards came up missing he had no idea that stopping the use of the prescriptions would cause his retina to detach, and he had no other symptoms which told him that he needed the medications, his eyesight didn't all of a sudden become blurry, nothing told him that damage was being caused by not taking the prescriptions. No one told him that not receive the prescribed dosages of these medications would cause his retina to detach. Over the months preceding the absence of his prescriptions at the medical line he had undergone many changes to his medications in the treatment of his Toxoplasmosis. The Plaintiff had just seen his eye doctor, Dr. Max Johnson, the week before and the prescriptions were supposed to be renewed, so, thinking that there may have been a slip up in the renewal process he relied on the medical staff to get his prescriptions to him as soon as possible. Not knowing there was an urgency to taking these medications the Plaintiff's reliance on the nursing staff to do what they said they were going to do was not unreasonable. The Plaintiff used two of Defendant Bachmeier's remedies for the situation, he told numerous nurses who worked the medical line over the days following the disappearance of the med-cards, July 17th, 2001, and he notified the traffic officer (security). The Plaintiff did not have access to the NDSP Pharmacy. Contrary to Defendant Johnson's affidavit inmates do not have access to him without permission and the ability to pass through two secured doors. That is why he trusted the nursing staff to make the inquiries for him.
> 
> . . .
> 
> Defendant Bachmeier should be taken off the lawsuit since the Plaintiff did not exhaust his administrative remedies concerning his claim that the NDSP failed to promptly treat his detached retina.

See Docket No. 30 (errors in original).

3

The Court has carefully reviewed the Report and Recommendation, relevant case law, Seibel's objection, and the entire record and finds the Report and Recommendation to be persuasive. Accordingly, the Court **ADOPTS** the Report and Recommendation (Docket No. 29) in its entirety and **GRANTS** the Defendants' motion for summary judgment (Docket No. 22) as follows:

1) Seibel's Eighth Amendment claim against the Defendants which is premised upon an alleged failure to properly dispense medications is **DISMISSED WITH PREJUDICE**.

2) Seibel's Eighth Amendment claim against the Defendants which is premised upon the alleged failure to promptly treat his detached retina is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust available prison remedies.

**IT IS SO ORDERED.**

Dated this 19th day of August, 2009.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court